UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

FILED
U.S. DISTRICT COURT
INDIANAPOLIS DIVISION
2016 JUL -6 PM 12: 24
SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS
CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>  )<br>Plaintiff, )<br>  )<br>v. )<br>  )<br>KWAME ABDUL-HAQQ, )<br>f/k/a Robert Borum, )<br>  )<br>  )<br>Defendant. ) | CAUSE NO. 1:16-CR-<br><br>1:16-cr- 0140 SEB -DML |

## INDICTMENT

The Grand Jury for the Southern District of Indiana charges:

At times material to Counts 1-6 of this Indictment:

**GENERAL ALLEGATIONS IN SUPPORT OF COUNTS 1 - 6**

1. From in or about 2006 to on or about February 5, 2013, in the Southern District of Indiana, defendant, KWAME ABDUL-HAQQ ("ABDUL-HAQQ"), knowingly devised and intended to devise a scheme and artifice to defraud and to obtain money, funds, and other property from the State of Indiana in the approximate amount of $175,000.00 by means of materially false and fraudulent pretenses, representations, and promises, which scheme is more fully described as follows:

1

2. ABDUL-HAQQ has an extensive criminal history, including convictions out of New York for:  Attempted 2nd Degree Murder with Intent, Kidnapping 2nd Degree, Robbery 1st Degree, Burglary 1st Degree, and Conspiracy 2nd:  Intent to perform a Class A felony.  The convictions occurred when ABDUL-HAQQ was still using his birth name "Robert Borum".

3. On October 11, 1984, Robert Borum (now ABDUL-HAQQ) was sentenced to seven (7) to twenty-one (21) years of incarceration following his conviction for attempted murder, as described above.

4. On July 22, 1993, Robert Borum submitted a petition to change his name to KWAME ABDUL-HAQQ to the Supreme Court of the State of New York in the County of Westchester while an inmate at Sing Sing Correctional Facility in Ossining, New York.  As part of this petition, Robert Borum's (now ABDUL-HAQQ's) convictions are specified as well as his reason for requesting a name change.

5. On July 30, 1993, Robert Borum's name change request was granted in a Decision and Order issued by the Supreme Court of the State of New York in the County of Westchester.  Robert Borum's name was officially changed to KWAME ABDUL-HAQQ.

6. On December 1, 2006, ABDUL-HAQQ completed and signed a "State of Indiana APPLICATION FOR EMPLOYMENT" indicating that he was applying for the desired job category of "Law Enforcement and Protective Services" as a

Correctional Officer for Pendleton Correctional Facility, Indiana Department of Correction ("DOC").

7.      Upon signing the Application, ABDUL-HAQQ certified that he did not make any misrepresentations or falsifications of statements and answers in his Application.

8.      A section of the Application titled:  "Criminal Record" asked the applicant:  "Have you ever been convicted of a crime, other than minor traffic violations?"  The application continued:  "If yes, provide information regarding the conviction (offense, date, sentence)".  ABDUL-HAQQ answered "No" to the question, even though, as he then knew, he had been "convicted of a crime, other than [a] minor traffic violation."

9.      On February 27, 2007, ABDUL-HAQQ received a letter from the Pendleton Correctional Facility indicating that he had been hired as a Correctional Officer with a bi-weekly starting salary of $953 or $24,778 annually.

10.     From in or around March 26, 2007 through on or about February 4, 2015, by and through the conduct described above, ABDUL-HAQQ, in the Southern District of Indiana and elsewhere, while employed as a correctional officer at the Pendleton Correctional Facility, caused interstate wire communications, namely, the transfer of approximately $175,000.00 in gross wages from the State of Indiana Payroll to ABDUL-HAQQ's bank account.

3

## Counts 1-6
## Wire Fraud
## 18 U.S.C. § 1343

11. On or about December 1, 2006, ABDUL-HAQQ falsely certified to the Indiana DOC that he had never been convicted of a crime when, in fact, as he then knew, ABDUL-HAQQ had been convicted of several related crimes in 1984 in New York under his prior name, Robert Borum.

12. The purpose of ABDUL-HAQQ's false certification was to garner employment with the Indiana DOC, which he did through his false and fraudulent pretenses, representations, and promises.

13. As a result of ABDUL-HAQQ's scheme and artifice to defraud, ABDUL-HAQQ caused the State of Indiana Payroll to transmit wire communications in interstate commerce on or about the dates alleged in the following chart, resulting in a transfer of $1,911.10 from the State of Indiana Payroll to ABDUL-HAQQ's bank account under Prearranged Payment and Deposit ("PPD") ID No. XXXXXX0158:

| COUNT | DATE | PAYOR | PPD ID NO. | AMOUNT |
|---|---|---|---|---|
| 1 | 12/17/2014 | State of Indiana Payroll | XXXXXX0158 | $329.07 |
| 2 | 12/31/2014 | State of Indiana Payroll | XXXXXX0158 | $315.95 |
| 3 | 1/14/2015 | State of Indiana Payroll | XXXXXX0158 | $316.52 |
| 4 | 1/28/2015 | State of Indiana Payroll | XXXXXX0158 | $316.52 |

| 5 | 2/11/2015 | State of Indiana Payroll | XXXXXX0158 | $316.52 |
| 6 | 2/25/2015 | State of Indiana Payroll | XXXXXX0158 | $316.52 |

Each of which is a separate violation of Title 18, United States Code, Section 1343.

## GENERAL ALLEGATIONS IN SUPPORT OF COUNTS 7 - 8

The Grand Jury for the Southern District of Indiana further charges:

At times material to Counts 7-8 of this Indictment:

14. From in or about 2009 to on or about August 15, 2013 in the Southern District of Indiana, defendant, KWAME ABDUL-HAQQ, knowingly devised and intended to devise a scheme and artifice to defraud the United States Department of Housing and Urban Development ("HUD"), the Federal Housing Administration ("FHA"), and Bank of America in the approximate amount of $50,000.00 by means of materially false and fraudulent pretenses, representations, and promises, which scheme is more fully described as follows:

15. On January 9, 2009, ABDUL-HAQQ refinanced his existing mortgage on a property he owned, 10893 Woods Drive in Ingalls, Indiana ("the property"), into an FHA insured mortgage. The eight page FHA mortgage refinance application was initialed by ABDUL-HAQQ on each page and signed on January 9, 2009.

16. Item number 5 on the FHA mortgage refinance application is titled: "Occupancy, Preservation, Maintenance, and Protection of the Property;

Borrower's Loan Application; Leaseholds" and states: "Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy . . . ."

17. ABDUL-HAQQ listed the property as his home address that he occupied and intended to continue occupying on the loan documents during the FHA refinance application process in 2009, even though, as he then knew, he did not occupy and did not intend to continue to occupy the property as his home.

18. On or about May 1, 2009, ABDUL-HAQQ entered into a lease agreement with Dominic Tilford ("Tilford"). ABDUL-HAQQ agreed to rent the property to Tilford for $850.00 dollars per month. Tilford rented the property from ABDUL-HAQQ from on or about May 1, 2009, until 2013.

19. ABDUL-HAQQ evicted Tilford from the property in 2013 and received a judgment in his favor requiring Tilford to pay money for alleged damages to the property.

20. On or about August 15, 2013, ABDUL-HAQQ applied for mortgage assistance from the FHA for the mortgage on the property by completing and signing a "Making Home Affordable Program Request for Mortgage Assistance" (RMA) application that he submitted to Bank of America. On this document, ABDUL-HAQQ indicated that the property was his principal residence and

6

indicated that it was not a rental property or second home even though, as he then knew, he was renting the property to Tilford, while he (ABDUL-HAQQ) was residing at 2028 Euclid Drive in Anderson, Indiana with his spouse.

21. The RMA application asked the borrower: "How many single family properties other than your principal residence do you and/or any co-borrower(s) own, individually, jointly, or with others?" ABDUL-HAQQ answered "0", even though, as he then knew, the property was not his principal residence and he resided at 2028 Euclid Drive in Anderson, Indiana with his spouse.

22. Section 9 of the RMA application is titled: "BORROWER AND CO-BORROWER ACKNOWLEDGEMENT AND AGREEMENT" and item number 1 states: "I certify that all of the information in this RMA is truthful and the hardship(s) identified above has contributed to submission of this request for mortgage relief." ABDUL-HAQQ signed the RMA application on August 15, 2013, and submitted it to Bank of America as part of the application process.

23. The RMA application process required ABDUL-HAQQ to submit proof of his residency in the form of a utility bill containing the borrower's name and address, or other such document. To that end, on or about September 11, 2013, ABDUL-HAQQ submitted utility bills from Fall Creek Regional Waste District. These utility bills were falsely altered and submitted to make it look as though ABDUL-HAQQ occupied the property as his residence, even though, as he then knew, ABDUL-HAQQ was not occupying the property as his residence.

7

24. Tilford was listed in the records of Fall Creek Regional Waste District as the tenant and occupant of the property since early 2009, not ABDUL-HAQQ.

25. ADBUL-HAQQ became delinquent on his FHA insured mortgage for ten (10) months. As a result, the property was sold by Bank of America in a "short sale" transaction (instead of foreclosure), causing HUD to pay a claim to Bank of America and suffer a loss of approximately $50,000.00.

### Count 7
### False Statement on Loan and Credit Applications
### 18 U.S.C. § 1014

26. On or about January 9, 2009, ABDUL-HAQQ applied with Bank of America for a mortgage refinance of his existing mortgage on the property into an FHA insured mortgage.

27. In the refinance application, ABDUL-HAQQ falsely stated to Bank of America and the FHA that the property was his home address that he occupied and intended to continue occupying for a period of at least one year, when in reality, as he then knew, he intended to and did rent the property to Tilford, commencing on or about at least May 1, 2009.

28. By and through the conduct described above, ABDUL-HAQQ, in the Southern District of Indiana, knowingly made a material false statement or report for the purpose of influencing the action of the FHA and Bank of America, an institution the accounts of which are insured by the Federal Deposit

Insurance Corporation, in connection with an application, commitment, or loan, or any change or extension of the same by renewal, deferment of action or otherwise, in violation of Title 18 United States Code, Section 1014.

**Count 8
False Statement on Loan and Credit Applications
18 U.S.C. § 1014**

29. On or about August 15, 2013, ABDUL-HAQQ applied for mortgage assistance for the mortgage on the property from the FHA by completing and signing a "Making Home Affordable Program Request for Mortgage Assistance" (RMA) application with Bank of America.

30. In the RMA application, ABDUL-HAQQ falsely stated that the property was his principal residence and indicated that it was not a rental property or second home even though he knew that he was renting the property to Tilford, while he (ABDUL-HAQQ) was residing at 2028 Euclid Drive in Anderson, Indiana with his spouse.

31. By and through the conduct described above, ABDUL-HAQQ, in the Southern District of Indiana, knowingly made a material false statement or report for the purpose of influencing the action of the FHA and Bank of America, an institution the accounts of which are insured by the Federal Deposit Insurance Corporation, in connection with an application, commitment, or loan,

or any change or extension of the same by renewal, deferment of action or otherwise, in violation of Title 18 United States Code, Section 1014.

## GENERAL ALLEGATIONS IN SUPPORT OF COUNT 9

The Grand Jury for the Southern District of Indiana further charges:

At times material to Count 9 of this Indictment:

32. On or about December 5, 2012, in the Southern District of Indiana, defendant, KWAME ABDUL-HAQQ, completed and signed a United States District Court "Application to proceed in District Court without Prepaying Fees or Costs" for a civil rights lawsuit against his employer and/or supervisors at the Indiana DOC.

33. The Application required ABDUL-HAQQ to sign and agree to the following: "I am a plaintiff or petitioner in this case and declare that I am unable to pay the costs of these proceedings and that I am entitled to the relief requested. I declare under penalty of perjury that the information below is true and understand that a false statement may result in a dismissal of my claims or an adverse ruling on this application."

34. A section of the Application required the applicant to list "Income from real property *(such as rental income)*". ABDUL-HAQQ wrote "N/A" as his answer in this section, even though, as he then knew, he was renting the property to Tilford during this period of time.

35. A section of the Application required the applicant to list "Other real estate *(i.e., cottage, vacation home/condo, rental property, land, buildings, etc.) (Please specify and list the value of each.)*." ABDUL-HAQQ wrote "None" as his answer in this section, even though, as he then knew, he owned a rental property located at 10893 Woods Drive in Ingalls, Indiana, and another property located at 1812 Nichol Avenue in Anderson, Indiana which was being used as a location of a business operated by ABDUL-HAQQ and his spouse.

36. ABDUL-HAQQ signed the Application under penalty of perjury on December 5, 2012.

### Count 9
### False Declarations Before the Court
### 18 U.S.C. § 1623

37. On or about December 5, 2012, ABDUL-HAQQ completed and signed a United States District Court "Application to proceed in District Court without Prepaying Fees or Costs" (long form) for a civil rights lawsuit against his employer and/or supervisors.

38. In the application, ABDUL-HAQQ falsely stated that he was not receiving rental income and that he and/or his spouse did not own any real estate in addition to their primary residence even though he knew that he was renting the property to Tilford at the time and he and/or his wife owned another

property located at 1812 Nichol Avenue in Anderson, Indiana, which was then being used as a location of a business operated by ABDUL-HAQQ and his wife.

39. ABDUL-HAQQ signed the "Application to proceed in District Court without Prepaying Fees or Costs" under penalty of perjury, knowing that his statements were false.

40. By and through the conduct described above, ABDUL-HAQQ, in the Southern District of Indiana, made a materially false declaration to a court of the United States, in violation of Title 18 United States Code, Section 1623.

A TRUE BILL:

FOREPERSON

JOSH J. MINKLER
United States Attorney

By: _____
Jonathan A. Bont
Assistant United States Attorney